Scofield, J.,
delivered the opinion of the court:
December 10, 1872, Jesse Taylor, collector of internal revenue for the sixth district of Tennessee, was suspended from office on account of a large defalcation appearing in his accounts. The claimant, one of his deputies, having been designated to perform the duties of the office during the suspension, acted as collector from that time until May 24, 1873.
During his term of service the claimant made regular reports in his own name, as acting collector, of the amounts collected and the amounts deposited by him to the credit of the government. The collections, as reported by himself, amounted to $13,761.57, and the deposits to $12,251.52, leaving him indebted to the government in the sum of $1,510.05.
The compensation due the claimant at that time, as subsequently ascertained by the accounting officers, ■ amounted to $1,251.02.
Section 1766, Revised Statutes, provides that—
“ No money shall be paid to any person for his compensation who is in arrears to the United States, until he has accounted *415 for anti paid into tlie Treasury all sums for wbick he may be liable.”
These facts and this law seem to make the case too plain for litigation. It has, however, become somewhat obscured by the mode of keeping the accounts in the Treasury Department and by the compromise made with Táylor, the suspended collector.
The claimant, as before stated, made all his reports in his own name, as acting collector, but the department, instead of opening an account with him, made the entries in the accouut of Taylor, as if he were still the acting officer.
When the successor to both Taylor and the claimant took possession of the office lie found and reported to the department several items of collection made by the latter officer, amounting in all to about $500, which the claimant had neglected to report. These items, although reported as against the claimant, were likewise entered in the account with Taylor.
The defalcation of Taylor, thus increased by that of the claimant, amounted to $12,878.79.
The accounts rested in this way until 1881, when Taylor offered to pay $5,000 and all costs in compromise. In making this offer he.pointed out the defalcation of the claimant, which had been charged in his account, as amounting to $1,999.62, and disclaimed his liability therefor. The compromise was finally accepted, “ provided that all amounts due to Mr. Taylor or Acting Collector Hiland on account of services rendered or expenses incurred be also covered into the Treasury on account of this balance.”
After this compromise the amount due claimant for services and expenses was ascertained, as above stated, to be $1,251.02. Drafts were made out for that amount, in the name of the claimant, and were then deposited and “ covered into the Treasury on account of this balance,” as provided in the compromise.
The claimant was liable to the government for all the public money which he personally took and appropriated to his own use. That liability was not discharged by the bookkeeping of the department. He reported in his own name, as acting collector, that he had retained $1,510.05 belonging to the government. The retention created the liability. Whether the matter was properly entered upon the Treasury books or not, he was none the less liable to account for it. For the amount re *416 ported against him by his successor, when properly proved, he was equally liable. Itis true these defalcations were all charged in the account of Taylor, but liability is neither created nor released by bookkeeping.
If the $6,000 had been accepted in compromise of the whole defalcation, both of Taylor and the claimant, without condition, the government would have no further claim against either. But it was not so accepted. On the contrary, it was expressly “ provided that all amounts due to Mr. Taylor or Acting Collector Hiland on account of services rendered or expenses incurred should be also covered into the Treasury on account of this balance.”
To be sure, the claimant was nota party to that compromise, and is not bound by it now unless he chooses to accept it. He cannot, however, accept jt in part and reject it in part. He cannot accept so much of it as releases him from liability for his defalcation and reject the part which releases the government from liability for his compensation.
If he assents to the compromise, he thereby releases his claim for compensation. If be rejects it, he becomesliable to so much of the counter-claim as will be equal to the amount of his services and expenses. In either event his claim is extinguished, and his petition must be dismissed.
Nott, J., did not sit at the trial of this case and took no part in the decision.